IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                               No. CR 03-1880 JB

FERNANDO TSO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Fernando Tso's Objection to Presentence Investigation Report and Sentencing Memorandum, filed November 15, 2004 (Doc. 97). The primary issues are (i) whether the Court can, under the Supreme Court's recent decision in Blakely v. Washington, enhance Tso's offense level because he allegedly restrained the victim; and (ii) whether Tso was a minimal, minimal/minor, or minor participant in the crime. Because the Court determines that it cannot enhance Tso's offense level because he allegedly restrained the victim, but that Tso played a minor role in the crime, the Court will sustain one objection and overrule one objection, and will find the offense level is 13, which is consistent with that contemplated by the plea agreement.

## FACTUAL BACKGROUND

Tso does not dispute the description of the offense conduct in the Presentence Investigation Report ("PSR"). From that description, the Court learns four individuals were involved in the crime at issue: Gabriel Kanawite, age 22 at the time of the offense; Ashley K.C., age 20 at the time of the offense; Fernando Tso, age 23 at the time of the offense; and Dexter Naville Tso, age 21 at the time

of the offense. The Navajo Department of Law Enforcement ("NDLE") arrested Fernando Tso and Dexter Tso for Public Intoxication as a result of their conduct.

In his interview with the FBI, Dexter Tso indicated that, on the evening of June 6, 2003, Kanawite picked up him and Fernando Tso. According to Dexter, he, Kanawite, and Fernando went to Red Lake just north of Navajo, New Mexico and fired for a short time an AR-15 semi-automatic rifle and a 9mm semi-automatic pistol that Kanawite brought. The three individuals then left the area and went to another location where they met Ashley and others.

Ashley asked Kanawite if he could fire the AR-15, but Kanawite, Fernando, and Dexter could not locate the magazine for the AR-15. Kanawite confronted Ashley and demanded the magazine. According to Dexter, Fernando Tso told Kanawite to search Ashley. Kanawite located the magazine in Ashley's back pocket.

After Kanawite kicked, pushed, hit, and threatened to kill Ashley, and after pointing the pistol at Ashley's head, Kanawite allowed Ashley to walk away from the location. When Ashley was 100 to 150 feet away, Kanawite fired as many as four rounds at Ashley. Dexter indicated that it appeared that Fernando Tso did not notice Kanawite shooting at Ashley. Kanawite approached Ashley, threw him to the ground, and used Ashley's sweatshirt to hogtie Ashley.

Dexter and Kanawite then placed Ashley, still bound, into the bed of the truck and drove to another location just north of Red Lake, where the NDLE officers later arrested the four individuals. At this location, Kanawite placed Ashley underneath the truck and instructed Fernando to "rev" the engine. Kanawite threatened to have Fernando run Ashley over.

Dexter and Fernando indicated that they thought Kanwite had gone too far. Both Fernando and Dexter were afraid to say anything to Kanawite because he was still armed. Dexter admitted that

he had consumed one 20 ounce bottle of beer and shared a 40 ounce beer with Fernando Tso.

On June 7, 2003, FBI agents interviewed Fernando Tso, who essentially recounted the information that Dexter Tso provided. Fernando Tso also stated that, after Kanawite tied Ashley with his shoelaces, he, Kanawite, and Dexter put Ashley in the back of Kanawite's truck. Fernando indicated that he did not see Kanawite fire the 9mm pistol at Ashley. Both Dexter and Fernando recalled that Fernando had gone to the front of the truck when Kanawite fired the rounds and that he was not in a position to see Kanawite.

## **PROCEDURAL BACKGROUND**

The indictment did not allege that Tso restrained the victim. Tso did not admit, and a jury did not find, those facts.

Tso's written plea agreement contained certain stipulations, including that "defendant's role in the assault (Count III of the Indictment) falls between that of a minimal participant and a minor participant. Therefore, a three (3) level decrease is warranted in the defendant's base offense level pursuant to U.S.S.G. § 3B1.2." Plea Agreement ¶ 10e, at 6 (executed June 7, 2004)(Doc. 77). After Tso made this stipulation with the United States, his co-defendant, Dexter Tso, stipulated with the United States that Dexter Tso was a purely minimal participant and entitled to a four level decrease in his base offense level.

Before Tso entered into his plea agreement, Gabriel Kanawite, a co-defendant and the primary wrongdoer in this matter, pled guilty. Although Fernando Tso remained willing to cooperate fully with the United States, the government concluded that it could not move for a downward departure for him because his assistance was not a sufficiently significant factor in Kanawite's decision to plead guilty.

Tso pled guilty to one count (Count III) of Assault with a Dangerous Weapon under 18 U.S.C. § 113(a)(3). Tso has been cooperative throughout this matter, and at the time of his plea, the parties contemplated that the United States would file a motion for downward departure for his substantial assistance. Given Tso's youth and lack of criminal history, he hoped that the United States' departure motion would enable him to be eligible for a sentence of probation.

In the PSR, the United States Probation Office found that Tso "assisted in the restraining and moving of [the victim] to another location where the defendant and Gabriel Kanawite placed [the victim] underneath a truck and instructed Fernando Tso to 'rev' the engine." PSR ¶ 28, at 11. As noted in paragraph 29 of the PSR:

> According to the offense conduct, the defendant appears to be less culpable than Gabriel Kanawite; thus, a mitigating role reduction is warranted as the defendant was a minor participant in the offense. The plea agreement provides that the defendant was a minor/minimal participant in the criminal activity constituting the instant offense. According to 3B1.2, Application Note 4, a minimal role is intended to cover defendant who are plainly among the least culpable of those involved in the conduct of the group. It appears that the defendant actively participated in the restraining and assault on Ashley C. with a motor vehicle. As a result, the defendant's role does not appear to be minor/minimal. However, in compliance with the plea agreement, the offense level is decreased by 3 levels for the defendant's mitigating role.

Probation thus accepted Fernando Tso's stipulation with the United States that he was a minimal/minor participant and entitled to a three level decrease in his base offense level.

Defendant Fernando Tso objects to the Presentence Investigation Report. He asks the Court to impose a sentence of twelve months and one day, which he contends would enable him to qualify for a boot camp program with the Bureau of Prisons.

### BLAKELY v. WASHINGTON

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court of the United States

held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.  Blakely v. Washington either clarified or extended application of Apprendi to determinate sentencing schemes.  In particular, Blakely v. Washington indicates that the phrase "statutory maximum" as used in Apprendi does not mean the maximum possible punishment for the offense under any set of facts, as the federal courts had largely concluded in upholding the federal sentencing guidelines against Apprendi challenges.  Instead, "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendan*t." Blakely v. Washington, 124 S.Ct. at 2537 (emphasis in original).

This Court has already ruled, in a number of sentencings since the Supreme Court's decision, that Blakely v. Washington precludes judicial fact finding under the preponderance of the evidence standard which would increase a defendant's sentence under the federal sentencing guidelines.  The Court has decided that judicial fact finding which would enhance a sentence violates the defendant's Sixth Amendment right to trial by jury.  See United States v. Booker, 375 F.3d 508, 517 (7th Cir. 2004)("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); United States v. Ameline, 376 F.3d 964, 974-75 (9th Cir. 2004)(holding that Blakely invalidates guideline enhancements under § 2D1.1).  But see United States v. Pineiro, 377 F.3d 464, 473 (5th Cir. 2004)(holding that "the Guidelines do not establish maximum sentences for Apprendi purposes").  Accordingly, this Court has decided under Blakely v. Washington that it may not impose a sentence in excess of the "statutory maximum," as defined in Blakely v. Washington, unless the jury

finds the facts on which the increased sentence rests beyond a reasonable doubt, or the defendant stipulated to aggravating sentencing factors or facts. Otherwise, the Court has continued to apply the Guidelines. The Court has determined that such an approach is most consistent with Congressional intent and with Blakely's constitutional limitations. The Court has, however, been giving alternative sentences under Williams v. New York, 337 U.S. 241 (1949), should the appellate courts declare the entire Guidelines unconstitutional.

## **MITIGATING ROLE**

Commentary 3(A) indicates that any adjustment for mitigating role is for the "Substantially Less Culpable than Average Participant": "This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S. Sentencing Guidelines Manual §3B1.2, cmt. 3(A). Commentary 3(C) confirms that the court's task is a fact-based determination:

> The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case. As with any other factual issue, the court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted.

Id. at §3B1.2, cmt. 3(C). The Guidelines Commission has made clear that a finding of "minimal participant" is to be used infrequently:

> Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.

Id. at §2B1.2, cmt. 4

Commentary 5 states that "Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants, but whose role could not be described as minimal." Id. at §2B1.2, cmt. 5

## ANALYSIS

### 1. Blakely v. Washington.

Tso raises his objection pursuant to Blakely v. Washington, 124 U.S. 2531 (2004). Tso argues that the PSR incorrectly includes a two-point victim related adjustment on the ground that the victim was physically restrained in the course of the offense.

The Court and the Probation Office cannot find the critical facts that would increase Fernando Tso's sentence. For the Court to make these findings would violate Tso's Sixth Amendment rights. Consequently, pursuant to Blakely v. Washington, the Court cannot find those facts and use them to increase Tso's sentence. The Court sustains Tso's objection to the two-level enhancement.

### 2. Minimal Role.

Tso also objects to Probation's finding that he played a greater role in the offense than his co-defendant, Dexter Tso. Fernando Tso contends that the Court should credit him with being a minimal participant rather than finding him to be a minor/minimal participant. Tso argues that the Court should consider him a "purely minimal" participant in the offense and credit him with a four-point reduction in his base offense level.

The Court does not believe that Tso was a minimal participant in this offense and therefore entitled to four-level reduction. The Court overrules the objection to the minor/minimal participant and finds that Tso was merely a minor participant.

**IT IS ORDERED** that the Defendant's objection to the two-level enhancement is sustained and his objection to the minor/minimal finding in the Presentence Report is overruled. The Court finds that the Defendant's offense level is 13. The Court will impose a sentence of twelve months and one day on the Defendant.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David Iglesias
  United States Attorney for the
  District of New Mexico
Stan Whitaker
  Assistant United States Attorney
Albuquerque, New Mexico

*Attorney for the Plaintiff*

Benjamin Gonzales
  Assistant Federal Defender
Albuquerque, New Mexico

*Attorney for Defendant Dexter Tso*

David A Streubel
Kelley, Streubel, Mortimer & Middlebrooks, LLC
Albuquerque, New Mexico

*Attorney for Defendant Fernando Tso*